UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL JARRARD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF REDDING, et al.,<br><br>　　　　Defendants. | No. 2:15-cv-00615-TLN-CMK<br><br>**ORDER** |

This matter is before the Court pursuant to Defendants City of Redding and Officer Kenneth Marks's ("Defendants") Motion for Partial Summary Judgment. (ECF No. 25.) Plaintiff Joel Jarrard ("Plaintiff") opposes the motion. (ECF No. 34.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is GRANTED.

### I.　INTRODUCTION AND FACTUAL BACKGROUND

This action arises out of the alleged use of excessive force by Defendant Marks on Plaintiff during a traffic stop. However, Defendants do not seek to have judgment entered on the claim that Defendant Marks used excessive force on Plaintiff in violation of the Fourth Amendment. In connection with the instant motion, Defendants submitted a statement of thirteen

1

facts that they contend are undisputed. Since it is so succinct, the Court will simply reproduce it here verbatim:

1. On November 24, 2013, [P]laintiff Joel Jarrard went out drinking with friends, including Daniel Jurgensen.

2. After leaving the clubs, Jurgensen, with Jarrard as a passenger, drove the wrong way down California Street in Redding, CA.

3. The vehicle was stopped by Redding Police Officer Provencio in a nearby parking structure.

4. Officer Marks, who had responded to a report of the vehicle stop over the police radio, arrived at the scene, where Officer Provencio asked him to watch Jarrard, who was seated on a curb with Breanna Pendley and Lottie Wydler.

5. Jarrard, who was smoking, was asked to put out his cigarette, which he initially did.

6. Jarrard subsequently "kneeled up on [his] knees to stand up", removed a cigarette from his pocket and, using his lighter, began to light another cigarette.

7. Officer Marks, who viewed Jarrard's non-compliance with Marks' attempts to control the scene of the traffic stop as a threat to officer safety, told him he was under arrest.

8. A struggle ensued between Jarrard and Marks during which Jarrard struck his head on the sidewalk, cutting his chin.

9. Plaintiff testified that he sustained broken ribs and a bulging disk in his neck.

10. A subsequent medical evaluation by [P]laintiff's personal dentist and oral surgeon showed that he suffered a broken jaw.

11. Plaintiff filed a government claim with the City of Redding based on the November 2013 incident, which was rejected on March 14, 2014.

12. The City notified [P]laintiff of the rejection by mail the same day.

13. Plaintiff filed his civil action on March 15, 2015, more than six months after the rejection of his government claim.

(ECF No. 25-1 at 1–2 (citations to Defendants' Supporting Evidence (ECF No. 26) and its related exhibits omitted).)[1]

///

---

[1] For ease of reference, the page numbers used in citations in this Order are the ECF page numbers.

Plaintiff factually disputes the seventh and eighth numbered paragraphs reproduced above. (ECF No. 34-1 at ¶¶ 7–8.)[2] However, these disputes are not material in the context of the instant motion. Moreover, Plaintiff contends the sixth and ninth numbered paragraphs are "incomplete" and elaborates on them briefly. (*See* ECF No. 34-1 at ¶¶ 6, 9.) One item of that elaboration is relevant to the Court's resolution of the instant motion: "Plaintiff had been waiting approximately 10 to 15 minutes after putting out the first cigarette, and notified Defendant Officer Marks that he intended to smoke a cigarette, prior to taking any action to smoke."[3] (ECF No. 34-1 at ¶ 6 (citing his own deposition (ECF No. 36-1), along with Ms. Pendley's deposition (ECF No. 36-4).)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that

---

[2] While conceding he had "consumed a minor amount of alcohol" on the night in question, Plaintiff "disputes the relevance" of the first numbered paragraph. (ECF No. 34-1 at ¶ 1.) The Court construes this as an attempt to raise an evidentiary objection on the grounds of irrelevance. It is unnecessary to rule on this objection to resolve the instant motion, so the Court declines to do so. Rather, this will be "more fruitfully and efficiently analyzed against the summary judgment standard itself." *Pinder v. Employment Dev. Dep't*, 227 F. Supp. 3d 1123, 1135 (E.D. Cal. 2017); *see also Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1123 (E.D. Cal. 2006) (noting that "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself").

[3] The Court observes that Plaintiff's opposition contains a section captioned "FACTS," which the Court has carefully reviewed. (ECF No. 34 at 2–3.) However, it is unnecessary to reproduce it here to resolve the instant motion.

party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

The Complaint asserts the following nine causes of action: (i) unreasonable seizure against Defendant Marks in violation of the Fourth Amendment pursuant 42 U.S.C. § 1983 ("Section 1983"); (ii) excessive force against Defendant Marks in violation of the Fourth Amendment pursuant to Section 1983; (iii) a *Monell* claim against the City of Redding pursuant to Section 1983; (iv) violation of California Civil Code § 52.1 against Defendant Marks; (v) intentional infliction of emotional distress against Defendant Marks; (vi) assault and battery against Defendant Marks; (vii) false arrest and imprisonment against Defendant Marks; (viii) negligence against Defendants; and (ix) negligent infliction of emotional distress against Defendant Marks. (ECF No. 2.)

Defendants have offered the following three bases for partial summary judgment:

> 1) As to all of [P]laintiff's state law claims for damages, those claims are barred because [P]laintiff filed this action more than six months after notification by mail of the denial of his government claim by the City of Redding. (Fourth through Ninth Causes of Action).
>
> 2) As to [P]laintiff's federal claims brought against the City of Redding, [P]laintiff cannot establish that he suffered a violation of his federal rights caused by an official policy of the City of Redding. (Third Cause of Action).
>
> 3) To the extent that [P]laintiff seeks recovery for his initial detention and, separate and apart from his excessive force claim, his arrest, Officer Marks is entitled to judgment as to such claims because [Plaintiff's] detention was reasonable under the circumstances. (First Cause of Action).

(ECF No. 25 at 4.) The Court will address them in order before briefly addressing Plaintiff's request for injunctive relief pursuant to California Civil Code § 52.1 *sua sponte*.

A. Fourth Through Ninth Causes of Action (State Law Claims For Damages)

As noted above, Defendants argue that Plaintiff's state law claims for damages are barred because Plaintiff filed this action more than six months after being notified by mail of the denial

of his government claim by the City of Redding. (ECF No. 25 at 4.) Plaintiff does not dispute that he filed a government claim with the City of Redding based on the incident in question, that this claim was rejected on March 14, 2014, that he was notified the same day, and that he did not file the instant action until March 15, 2015. (ECF No. 34-1 at ¶¶ 11–13.) However, Plaintiff's opposition does not substantively address Defendants' legal contention that this requires the Court to grant summary judgment on his state law claims for damages. (*See generally* ECF No. 34.) This does not result in the automatic granting of Defendants' motion with respect to these claims. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). When a summary judgment motion is unopposed with respect to particular claim, "a district court must determine whether summary judgment is appropriate — that is, whether the moving party has shown itself to be entitled to judgment as a matter of law" with respect to that claim. *Pinder v. Employment Dev. Dep't*, 227 F. Supp. 3d 1123, 1135 (E.D. Cal. 2017) (internal quotation marks omitted).

Defendants have plainly shown that Plaintiff was required to present each of his state law claims for damages to the City of Redding before he could bring them against either of Defendants. (*See* ECF No. 25 at 5–6 (citing authorities with respect to each such claim).) Further, having reviewed the contents of the written notice rejecting Plaintiff's claim (ECF No. 27-5 at 2), the Court agrees with Defendants that it complies with California Government Code § 913. Accordingly, as Defendants correctly observe, Plaintiff's state claims for damages were subject to the six-month limitations period provided by California Government Code §§ 945.6 and 950.6. It is undisputed that Plaintiff did not file the instant action until more than a year after the mailing of the written notice of his claim's rejection. (ECF No. 34-1 at ¶¶ 11–13.) It is clear Defendants have shown themselves to be entitled to judgment as a matter of law on Plaintiff's state law claims for damages.

For the foregoing reasons, the Motion for Partial Summary Judgment is GRANTED with respect to the Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action insofar as they seek damages.

/ / /

/ / /

B. Third Cause of Action (*Monell*)

In order to streamline the Court's analysis of Defendants' motion with respect to Plaintiff's Second Cause of Action, the Court will briefly discuss so-called *Monell* liability generally. "In *Monell*, the Supreme Court held that municipalities are 'persons' subject to damages liability under section 1983 where 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.'" *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (quoting *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978)). "The Court made clear that the municipality itself must cause the constitutional deprivation and that a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*." *Id*. Consequently, a plaintiff seeking to establish municipal liability must demonstrate a municipality had a "deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (*Monell*, 436 U.S. 694–95). A plaintiff may establish municipal liability under Section 1983 in one of the following three ways:

> "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."

*Gillette*, 979 F.2d at 1346–47 (internal quotation marks and citations omitted).

Defendants argue that Plaintiff is unable to raise a triable issue under any of these three ways of establishing a *Monell* claim. "Under the federal [summary judgment] standard a moving defendant may shift the burden of producing evidence to the nonmoving plaintiff merely by 'showing' — that is, pointing out through argument — the absence of evidence to support plaintiff's claim." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). Plaintiff comes forward with no evidence that it contends would enable a reasonable jury to return

7

a verdict in its favor.  Consequently, consistent with Rule 56(e), the Court may consider it undisputed that Plaintiff has no such evidence.  The question then is whether Defendants have demonstrated that Defendant City of Redding is entitled to judgment as a matter of law on the Second Cause of Action.  They have.  (*See* ECF No. 25 at 7–9.)

For the sake of completeness, the Court will address one additional point before proceeding.  Defendants anticipated — incorrectly — that Plaintiff would oppose their motion with respect to his Second Cause of Action.  Consequently, they preemptively addressed "two alleged incidents" relating to Defendant Marks.  (ECF No. 25 at 8.)  The first incident was apparently the subject of a civil suit brought against Defendant Marks and the City of Redding in connection with an alleged incident involving the use of a "stun gun."[4]  (*See* ECF No. 26-1 at ¶ 7.)  In the second incident, Defendant Marks allegedly shot a man who was later charged with assault and entered into a plea deal.  (ECF No. 26-1 at ¶ 8.)

With respect to the first incident, Defendants have submitted a declaration of the attorney of record in that case that indicates the suit was dismissed with no finding of liability against either Defendant Marks or the City of Redding.  (*See* ECF No. 26-1 at ¶ 7.)  According to the same declaration, neither an administrative complaint nor a civil action was filed against either Officer Marks or the City of Redding in connection with the second incident.  (ECF No. 26-1 at ¶ 8.)  As Plaintiff has not properly addressed Defendants' assertions of fact in connection with these two incidents, the Court considers these assertions to be undisputed for purposes of this motion.  *See* Fed. R. Civ. P. 56(e).  Thus, between these two alleged incidents we have a *single accusation* of wrongdoing with no evidence any has actually occurred.  A reasonable jury cannot possibly conclude that this shows the existence of a "formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."[5]  *Gillette*, 979 F.2d at 1346 (internal quotation marks omitted).  Consequently, a reasonable jury could not find for Plaintiff on his *Monell* claim against the City

---

[4] It is unclear whether Defendant Marks or another officer is alleged to have used the stun gun.  The Court will assume for purposes of this motion that the allegation was made against Defendant Marks.

[5] The second and third ways of establishing *Monell* liability discussed above are not implicated.  *See Gillette*, 979 F.2d at 1346–47.

1    of Redding even if it were shown Defendant Marks's conduct in this case violated Plaintiff's

2    Fourth Amendment rights.

3        For the foregoing reasons, the Motion for Partial Summary Judgment is GRANTED with

4    respect to the Third Cause of Action.

5        C.  First Cause of Action (Unreasonable Seizure in Violation of the Fourth Amendment)

6        Aside from "re-alleg[ing] and incorporat[ing] by reference" the preceding paragraphs of

7    the Complaint, the First Cause of Action simply provides that Defendant Marks violated

8    Plaintiff's "right as provided for under the Fourth Amendment of the United States Constitution

9    to be free from unreasonable seizures." (ECF No. 2 at ¶¶ 32–33.) Defendants indicate that they

10   are unsure "what conduct the First Cause of Action is meant to encompass." (ECF No. 25 at 9.)

11   So, as noted above, they argue that "[t]o the extent [P]laintiff seeks recovery for his initial

12   detention and, separate and apart from his excessive force claim, his arrest, [Defendant] Marks is

13   entitled to judgment as to such claims because [Plaintiff's] detention was reasonable under the

14   circumstances." (ECF No. 25 at 3.)

15       Defendants' motion with respect to the First Cause of Action is not unopposed. Having

16   carefully reviewed his submission, in essence the opposition demands the Court answer three

17   discrete legal questions. In examining the parties' positions on these three points it becomes

18   evident that their disagreements results from Plaintiff acting as if this Court is writing on a clean

19   slate. In reality, the Supreme Court provides clear answers to all three of these Fourth

20   Amendment questions.

21       Before analyzing the questions raised by the opposition, the Court will touch on a few

22   preliminary points to streamline that analysis. First, the Court will refer to the period of time

23   prior to Plaintiff taking any action to smoke a second cigarette as his "detention." Second, the

24   Court will use 15 minutes for the length of this detention.[6] (ECF No. 34-1 at ¶ 6.) Third, the

25   propriety of the traffic stop with respect to the driver, Mr. Jurgensen, has not been put at issue in

---

[6] The Court does this as 15 minutes is the longer end of the range given by Plaintiff. (*See, e.g.*, ECF No. 34 at 2; ECF No. 34-1 at ¶ 6.) In another place in the opposition Plaintiff indicates he "proceed to smoke twenty minutes after being asked to refrain." (ECF No. 34 at 5.) However, "twenty minutes" does not appear in the portions of the deposition transcripts cited by Plaintiff in support of that figure. (*Compare* ECF No. 34 at 5 *with* ECF No. 36-1 at 56 *and with* ECF No. 36-4 at 55–59.)

this case. It is undisputed that Mr. Jurgensen was pulled over after driving in the wrong direction on California Street in Redding. (*See* ECF No. 25 at 10; ECF No. 34-1 at ¶ 2.) Obviously, consistent with the Fourth Amendment *Mr. Jurgensen* could be subjected to a traffic stop of ordinary length for driving in the wrong direction. Plaintiff does not suggest otherwise. (*See generally* ECF No. 34.) Further, there are no allegations in the Complaint — or suggestions in Plaintiff's opposition to the instant motion — that traffic stop *as it related to Mr. Jurgensen* was anything but ordinary, including in its duration. (*See generally* ECF Nos. 2 & 34.) Fourth, Plaintiff does not dispute that he "proceeded to smoke after [Defendant] Marks told him not to." (ECF No. 34 at 5:5, 26–27; *see also* ECF No. 34-1 at ¶ 5.) Finally, the traffic stop had not concluded when this occurred. (*See* ECF No. 2 at ¶ 14; ECF No. 34 at 5.)

With these in mind, the Court turns to the parties' first point of legal disagreement. Citing *Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997), and *Arizona v. Johnson*, 555 U.S. 323, 330–332 (2009), Defendants contend that "[i]t is settled law that police may ask passengers to exit a vehicle during a traffic stop, and detain them at the scene while they are investigating the stop." (ECF No. 25 at 10.) Ignoring these authorities, Plaintiff suggests his detention should be measured under the standard set out in *Terry v. Ohio*, 392 U.S. 1 (1968). (ECF No. 34 at 4–5.) Obviously, in the ordinary traffic stop, i.e., one where the car is pulled over for "bad driving," the passenger will have done nothing wrong and is, nevertheless, seized within the Fourth Amendment. *See Brendlin v. California*, 551 U.S. 249, 257 (2007). Where, as here, it is not disputed that the driver was appropriately stopped for his driving and this stop was not extended for reasons unrelated to that infraction, the question is whether that seizure of the passenger is reasonable within the Fourth Amendment. But it is not an *open question* for courts like this one that are bound by the decisions of the United States Supreme Court. "The temporary seizure of driver and *passengers* ordinarily continues, and *remains reasonable*, *for the duration of the stop*." *Johnson*, 555 U.S. at 333 (emphasis added). Simply put, in these circumstances, "[t]he police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Id*. at 327.

The Court now turns to the parties' second point of legal disagreement. Citing *Wilson*,

*Johnson*, and *Brendlin*, Defendants contend these cases stand for the proposition that police officers — for their safety and the safety of others on the scene — may control the movement and conduct of passengers during the duration of a traffic stop. (ECF No. 25 at 10–11.) Defendants further contend that it follows that Defendant Marks may lawfully order Plaintiff to remain in one place and refrain from smoking for the duration of the traffic stop. (ECF No. 25 at 10–11.) Finally, Defendants argue Plaintiff's refusal to comply with these orders supplied probable cause to arrest Plaintiff for violating California Penal Code § 148(a). (ECF No. 25 at 11.)

Plaintiff's response is essentially a continuation of his first argument and consists of two points. First, the passenger of a car cannot be ordered to refrain from doing things during a traffic stop unless they are independently prohibited by law. (*See, e.g.*, ECF No. 34 at 5 & n.1 (noting that he was not smoking in a location that was prohibited by ordinance).) Second, the extent to which a police officer can control a passenger's conduct and movement is a function of how wrongful the passenger's conduct was that led to the stop in the first place. Neither is correct as the authorities cited by Defendants demonstrate.

Plaintiff's suggestion that the Fourth Amendment categorically prohibits police officers from ordering passengers to refrain from otherwise legal activity for the duration of an ordinary traffic stop cannot withstand close scrutiny. The Court has already noted that *Johnson* permits the temporary detention of a passenger for the duration of the ordinary traffic stop. That is, a police officer can require that passenger *remain at the scene* of such a traffic stop until its completion. *Johnson*, 555 U.S. at 333. In *Wilson*, the Supreme Court held "that an officer making a traffic stop may order passengers to *get out of the car* pending completion of the stop." *Wilson*, 519 U.S. at 415 (emphasis added). Relying on *Wilson*, the Ninth Circuit held that the Fourth Amendment allows an officer to order a passenger who has exited an automobile during a traffic stop to *reenter* the vehicle. *United States v. Williams*, 419 F.3d 1029, 1034 (9th Cir. 2005). Passengers get into — get out of — walk away from — cars all of the time without violating the law. Nevertheless, the police officer in each of these three cases ordered the passenger in question from taking these actions without violating the Fourth Amendment. Plaintiff's position is simply inconsistent with binding precedent and, therefore, must be rejected.

11

The same is true of the second point raised by Plaintiff.  The explanation for this is precisely where Defendants indicated it could be found in the opening brief — *Johnson*, 555 U.S. at 330–32.  As *Johnson* explained, police officers are authorized to control the scene for the brief duration of an ordinary traffic stop.  *Id*.  This is true even where passengers are present.  *Id*.  The governmental interest that justifies the imposition on passengers is the concern for officer safety.  *Id*.  This concern is implicated by the general dangerousness of traffic stops.  *Id*.  Contrary to Plaintiff's suggestion, passenger pre-traffic stop conduct is not at issue.  Police officers' authority to control the scene is not a function of a passenger's pre-traffic stop misconduct.  Ordinarily, as here, there will not be any.

In sum, Plaintiff could be ordered to refrain from smoking and remain seated during the course of the traffic stop at issue in this case even though the stop was not provoked by any misconduct by Plaintiff.  That is, these were lawful orders which Plaintiff could be given consistent with the Fourth Amendment.  Thus, as the authorities cited by Defendants indicate, there was probable cause for Plaintiff to be arrested for violating California Penal Code § 148(a) when he, admittedly, defied the orders he received.  (*See* ECF No. 25 at 11.)

The Court now turns to the parties' third point of legal disagreement.  Plaintiff contends that the general rule is "an officer who uses excessive force in the course of making an arrest or detention renders the arrest itself unreasonable" within the meaning of the Fourth Amendment even if the arrest is supported by probable cause.[7]  (ECF No. 34 at 5.)  This argument can be reasonably read in one of two ways.

One reading is that Plaintiff is arguing as follows: under the Fourth Amendment, a police officer may later be treated as if the officer made an arrest without probable cause — even when there was probable cause for that arrest — if at some other point in the encounter the officer's conduct was unreasonable within the meaning of the Fourth Amendment.  Such an argument is irreconcilable with Supreme Court and Ninth Circuit precedent.  The Ninth Circuit has made clear

---

[7] Plaintiff indicates this third point of disagreement encapsulates the "gravamen" of his First Cause of Action. (ECF No. 34 at 7.)  Plaintiff makes no effort to explain why the first two points of disagreement are properly before the Court, as they are apparently *not the gravamen* of his First Cause of Action and a plaintiff's opposition to a motion for summary judgment is not a substitute for filing an amended complaint.  *See Pinder*, 227 F. Supp. 3d at 1148 n.15.  In any event, the Court addressed the first two legal disagreements for the sake of completeness.

that "excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). The Supreme Court has explained that where, as here, "a plaintiff has [multiple] Fourth Amendment claims, they should be analyzed separately." *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1544, 1547 (2017) (holding that the Fourth Amendment "provid[ed] no basis" for the Ninth Circuit's so-called "provocation rule" because "[a] different Fourth Amendment violation cannot transform a later, reasonable use of force into an unreasonable seizure").

A second reading is that Plaintiff is arguing as follows: if the arrest is otherwise unlawful under state law, this renders an arrestee's seizure a *per se* unreasonable seizure within the meaning of the Fourth Amendment even if the arrest is supported by probable cause. Ninth Circuit and Supreme Court precedent, again, are clear that this is not the law. *Virginia v. Moore*, 553 U.S. 164, 176 (2008); *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010). As the Ninth Circuit explained, relying on *Moore*, an officer is entitled to judgment as a matter of law on a "§ 1983 Fourth Amendment arrest claim" where the arrest is supported by probable cause, "even though [the arrest in question] was impermissible under state law." *Edgerly*, 599 F.3d at 956 (citing *Moore*, 553 U.S. at 176 (holding that officers did not violate the Fourth Amendment by arresting a driver whom they had probable cause to believe had violated a state driving law even though, under state law, the officers should have issued a summons for the misdemeanor rather than make an arrest)).

For the foregoing reasons, the Motion for Summary Judgment is GRANTED with respect to the First Cause of Action.

D. <u>Fourth Cause of Action (Claim for Injunctive Relief)</u>

The Court will now address Plaintiff's request for injunctive relief pursuant to California Civil Code § 52.1. In relevant part, Plaintiff's prayer for relief seeks the following: "injunctive relief enjoining Defendant [City of Redding] from authorizing, allowing, or ratifying the practice by any police officer employee of Defendant [City of Redding] from using excessive and unreasonable force against persons, pursuant to California Civil Code [§] 52.1." (ECF No. 2 at

13

10.) Although not raised by the parties, the Court has a duty to raise the adequacy of Plaintiff's standing to obtain such relief. *See Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). Candidly, it strikes the Court that Plaintiff has a *Lyons* problem. That is, having carefully reviewed the allegations in the Complaint, the Court has difficulty seeing how Plaintiff has standing to seek injunctive relief of the sort sought consistent with *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and its progeny. The Court's duty to raise the adequacy of standing *sua sponte* does not require the Court to *resolve* the issue without additional briefing. It is Plaintiff's burden to demonstrate he has standing to seek this relief. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017). He will be given the opportunity do so as set forth in Section IV of this Order. In doing so, he should specifically identify which, if any, allegations in the Complaint he contends supports that he has standing with respect to his request for injunctive relief.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment is GRANTED. Accordingly, IT IS HEREBY ORDERED that:

1. Judgment is entered in favor of Defendant Marks on the First Cause of Action.

2. Judgment is entered in favor of Defendant City of Redding on the Third Cause of Action.

3. Judgment is entered in favor of Defendant Marks on the Fourth, Fifth, Sixth, Seventh, and Ninth Causes of Action insofar as they seek damages.

4. Judgment is entered in favor of Defendants on the Eighth Cause of Action insofar as it seek damages.

5. Plaintiff shall file supplemental briefing not to exceed five (5) pages demonstrating that he has standing to seek his requested injunctive relief. Alternatively, he may file a statement indicating that he voluntarily dismisses his request for such relief. In either case, Plaintiff must

/ / /

/ / /

/ / /

14

file his submission within (7) days from the date this Order is entered on the docket.  If Plaintiff chooses to file supplemental briefing, Defendants will have seven (7) days from the date such supplemental briefing is filed to file a response.  Defendants' response shall also not exceed five (5) pages.

IT IS SO ORDERED.

Dated: 1/30/2018

Troy L. Nunley
United States District Judge